633 So.2d 45 (1994)
The CADLE COMPANY II, INC., Appellant,
v.
Edward STAMM, Appellee.
No. 92-4270.
District Court of Appeal of Florida, First District.
February 7, 1994.
Rehearing Denied March 4, 1994.
Karl C. Landsteiner of Goetz, Hartman and Landsteiner, Fort Myers, for appellant.
Dana C. Matthews, Destin, for appellee.
DAVIS, Judge.
Appellant, The Cadle Company II, Inc., seeks reversal of an order dismissing its Second Amended Complaint with prejudice. The Second Amended Complaint was dismissed with prejudice on the basis that the action was barred by the applicable statute of limitations. The issue before this Court is whether the statute of limitations granted to the FDIC under 12 U.S.C. section 1821(d)(14) inures to the benefit of a subsequent holder, when a promissory note has been executed and delivered to a Louisiana lending institution which was subsequently deemed insolvent and liquidated by the Federal Deposit Insurance Corporation which thereafter sold, transferred and assigned the promissory note to the holder who now seeks to enforce the promissory note.[1] We answer *46 in the affirmative and reverse the trial court's dismissal of the complaint.
The Cadle Company II sued Appellee, Edward Stamm, on a note executed and delivered by Stamm to the Hub City Bank and Trust Company of Lafayette, Louisiana. The note was payable on demand, or, if no demand was made, on November 7, 1982. The Cadle Company II states that the date on the note was May 11, 1982. Edward Stamm states that the date he actually signed the note was May 13, 1982. The parties agree that the five-year state statute of limitations began to run, at the earliest, on either May 11 or May 13, 1982. The parties also agree that the five-year state statute of limitations had not yet run when the Federal Deposit Insurance Corporation (FDIC) became the liquidator of the Hub City Bank and took possession of Stamm's note on February 20, 1987. The parties agree further that, under federal law, the FDIC is entitled to a new six year statute of limitations to sue on claims derived from insolvent banks, running from the date the FDIC was appointed receiver of the failed bank's assets, as long as the applicable state statute of limitations had not yet run on the claim. See 12 U.S.C. § 1821(d)(14).
The Cadle Company II acquired the note from FDIC on November 10, 1988, and brought suit to collect on the note on June 21, 1991. There is no factual dispute before this Court. The question whether the six year statute of limitations in 12 U.S.C. § 1821 (d)(14) can be extended to benefit an assignee of the FDIC is purely one of law and policy.
The argument against extending the six year statute of limitations to subsequent assignees of the FDIC is that the statute expressly provides that the limitations period is to be applied in "any action brought by the Corporation as conservator or receiver ..." Thus, those who oppose its extension argue that it cannot be used in an action brought by anyone else. This argument was cogently rejected in Federal Deposit Insurance Corporation v. Bledsoe, 989 F.2d 805, 809-810 (5th Cir.1993), the first federal Circuit Court to address this precise question. That court stated that the statute does not preclude the use of the extended limitations period by assignees of the FDIC; rather, the statute is simply silent on the question of assignee's rights. Where the statute is silent, courts must turn to the common law to "fill the inevitable statutory gaps." Id. "Fortunately, while the statute is quiet, the common law speaks in a loud and consistent voice: An assignee stands in the shoes of his assignor." Id. (emphasis in original).
The Bledsoe court went on to explain the sound policy reasons for extending the lengthier statute of limitations to assignees of the FDIC. In D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) the FDIC was protected from the effects of secret agreements which would negatively impact the bank assets from which the FDIC or FSLIC could satisfy the claims of insured account holders. Subsequently, courts have extended this protection to assignees of the FDIC and FSLIC, holding that doing so provides the federal agency with a greater ability to fulfill its mission, by being able to sell such assets and use the proceeds to protect the assets of the failed financial institution. See Bledsoe, 989 F.2d at 810, citing Porras v. Petroplex Sav. Assn., 903 F.2d 379 (5th Cir.1990); see also Sunchase Apartments v. Sunbelt Service Corp., 596 So.2d 119 (Fla. 1st DCA 1992). For the same policy reasons, courts have also extended federal holder in due course status to private assignees of the FDIC and FSLIC. Bledsoe at 811, see also Lassiter v. Resolution Trust Corp., 610 So.2d 531 (Fla. 5th DCA 1992) (under D'Oench Duhme doctrine, FDIC and subsequent note holders enjoy the rights of a holder in due course even without meeting the technical requirements of state laws).
In Martin v. Pioneer Title Company of Ada County, 1993 WL 381101 (Idaho Ct.App. July 8, 1993), the court explained that if this statute of limitations were not extended to assignees of the FDIC, the agency would be *47 forced to hold all such claims and prosecute them itself, since they would be worthless to all others. Such a result would be contrary to the policy purposes of the appointment of the FDIC as receiver of the assets of a failed banking institution. Id. at 3. The court quoted from the remarks of "Senator Reigle, who was the floor manager during the Senate debate on the conference report on the bill: ... `the extended statute of limitations periods ... should be construed by the Federal government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods.'"
Every federal court which has considered this question has concluded that the extended statute of limitations should be allowed to be claimed by assignees of the FDIC. See FDIC v. Bledsoe, supra; Mountain States Financial Resources Corp. v. Agrawal, 777 F. Supp. 1550 (W.D.Okla. 1991); Fall v. Keasler, 1991 WL 340182 (N.D.Cal. Dec. 18, 1991). The overwhelming majority of state courts which have addressed this issue have also concluded that the benefit of the federal statute of limitations should inure to assignees of the FDIC. See Central States Resources Corp. v. First Nat'l Bank in Morrill, Nebraska, 243 Neb. 538, 501 N.W.2d 271 (1993); The Cadle Company II v. Lewis, 864 P.2d 718 (Kan. 1993); The Cadle Company v. Matheson, 870 S.W.2d 548 (Tex. Ct. App. 1994) (Houston Division); Martin v. Pioneer Title Co. of Ada County, 1993 WL 381101 (Idaho Ct.App. July 8, 1993); White v. Moriarty, 15 Cal. App.4th 1290, 19 Cal. Rptr.2d 200 (1993); Jon Luce Builder, Inc. v. First Gibraltar Bank, F.S.B., 849 S.W.2d 451 (Tex. Ct. App. 1993) (Austin Division); Thweatt v. Jackson, 838 S.W.2d 725 (Tex. Ct. App. 1992) (Austin Division); 12 U.S.C. § 1821(d)(14); but see Tivoli Ventures, Inc. v. Tallman, 852 P.2d 1310 (Colo.Ct.App. 1992); Federal Debt Management, Inc. v. Weatherly, 842 S.W.2d 774 (Tex. Ct. App. 1992) (Dallas Division).[2]
This Court concurs with the majority view that the important public policy served by giving the FDIC an extended statute of limitations requires the availability of that limitations period in actions brought by assignees of the FDIC. Accordingly, the Final Order of the trial court dismissing the Second Amended Complaint with prejudice because of the operation of the statute of limitations is REVERSED.
BOOTH and LAWRENCE, JJ., concur.
NOTES
[1] The Court notes that a number of cases have been decided since the trial court entered its order which address this issue, and the trial court did not have the benefit of those decisions when making its ruling.
[2] Of all these decisions which have addressed the exact question presented in this appeal, the parties have cited to this court only three: Mountain States, White v. Moriarty, and The Cadle Company II, Inc. v. Lewis. The purpose of Fla.R.App.P. 9.200(g), permitting the filing of notices of supplemental authority, is to give the parties a vehicle to inform the court of "decisions ... discovered after the last brief served in the cause." It is particularly important in a case such as this, in which the Court is being asked to address a question of first impression in this state on which the law is evolving across the country. While White v. Moriarty and Lewis were cited to this Court as supplemental authority, additional supplemental authorities would have been welcome and appropriate.