PER CURIAM.
Andra G. Thacker petitions this court for a writ of mandamus directing Calhoun Circuit Judge Brenda S. Stedham to set aside an order “granting leave” for Peggy P. Miller Lacher, one of Thacker’s attorneys, to “promptly” withdraw from her representation of Thacker in the underlying divorce action. Thacker’s petition also seeks a writ ordering Judge Stedham to recuse herself from the underlying divorce action. For the reasons set forth below, we deny the petition.
The materials the parties have submitted in support of and in opposition to the petition indicate the following. In February 2009, Thacker, through her attorney, Arthur F. Fite, III, filed a complaint in the Calhoun Circuit Court seeking a divorce from her husband, Alvin Thacker (“Alvin”). Alvin, also represented by counsel, answered and filed a counterclaim in March 2009, but neither party seemed inclined to pursue the matter, and the case was placed on the trial court’s administrative docket. On October 18, 2013, Alvin moved to have the matter placed on the court’s active docket, and the trial court granted that request. Thereafter, the parties began actively litigating the case. At a pretrial conference on February 10, 2014, Judge Stedham informed the attorneys for both Thacker and Alvin that, because the ease had been pending for five years, the matter should be set for trial at a docket call in the next two months.
After the pretrial conference, Fite asked Lacher to join him in representing Thacker in the case. Lacher filed a notice of appearance in the case on March 12, 2014. Two days later, on March 14, 2014, Lacher filed a motion seeking Judge Stedham’s recusal.
Lacher filed an affidavit in this case stating that in June 2013, nine months before appearing as counsel in this matter, she had announced that she would be seeking the judgeship held by Judge Stedham, who was seeking reelection in 2014. Lacher formed a campaign committee in June 2013, and in February 2014 — before appearing as counsel in this case — she qualified to run against Judge Stedham. Lacher stated that the basis for the motion seeking Judge Stedham’s recusal was Lacher’s entry as counsel in the case.
On April 11, 2014, Judge Stedham held a hearing on the motion to recuse. Lacher said in her affidavit that she did not receive any communication, other than the notice of the hearing, from the trial court before the hearing. At the outset of the hearing, the following discussion took place among Judge Stedham and the attorneys for both parties:
“THE COURT: Good morning. Ms. Lacher, I can’t have you in the courtroom, and so you’ll need to leave.
“MS. LACHER: You can’t have me in your courtroom?
“THE COURT: No, ma’am, because I can’t handle cases that you’re involved in actively.
“MR. FITE: I thought you—
“THE COURT: No. I asked my office to let everyone know that I can’t have Peggy [Lacher] here at this hearing, so thank you very much.
“MR. [CHRIS] HOPKINS [Attorney for Alvin]: I thought you had an order saying that.
“THE COURT: Right.
“Thank you very much. I hope you have a good day. Okay. There was an email sent out in March to everyone as well.
“MR. FITE: I received that.
*79 “MR. HOPKINS: That’s right. I guess it was an e-mail. My mistake.”
During the hearing, Fite stated that he had been practicing law since 1971 and that he had previously handled domestic-relations cases. When asked by the trial court why he had decided to associate Lacher in this case “at this date,” Fite stated: “Well, in this particular case, I’m sort of known for not being very warm and fuzzy, and sometimes it’s appropriate to have another lawyer who can provide that element.” The trial court asked Fite whether he “understood when he retained [Lacher] that if she came into the case, that I might feel compelled to recuse, right?” Fite replied: “Yes, we knew that.” Later in the hearing, Fite stated:“[W]e knew that [recusal] might be an issue that might be raised, but nevertheless, I wanted [Lacher] to assist me with my client, so that’s why I asked her to come on.”
On April 23, 2014, Judge Stedham entered a lengthy order explaining why she was not going to recuse herself and concluded that Lacher’s withdrawal from the case as associated counsel would avoid the necessity for Judge Stedham’s recusal. Accordingly, the trial court granted permission for Lacher to withdraw and directed Lacher “to promptly do so in order that this case may proceed without further delay.” The trial court then found that the motion to recuse was moot. On May 2, 2014, Thacker filed in this court an “emergency” petition for the writ of mandamus.
In her petition, Thacker contends that the trial court erred in requiring Lacher to withdraw as one of Thacker’s attorneys instead of ruling on “that attorney’s” motion to recuse. In other words, Thacker contends that the trial court improperly disqualified Lacher from representing her in this case. Thacker also contends that this court should order the trial court to rule on the motion to recuse rather than finding that that motion is moot because Lacher must withdraw. Because the issues are so closely intertwined, we will address them together.
A petition for a writ of mandamus is the proper vehicle for reviewing the disqualification of an attorney in a given matter, see, e.g., Tyson v. Jones, 60 So.3d 831, 851-52 (Ala.2010), and for reviewing the denial of a motion to recuse, Ex parte City of Dothan Pers. Bd., 831 So.2d 1, 5 (Ala.2002).
“A trial judge’s ruling on a motion to recuse is reviewed to determine whether the judge exceeded his or her discretion. See Borders v. City of Huntsville, 875 So.2d 1168, 1176 (Ala.2003). The necessity for recusal is evaluated by the ‘totality of the facts’ and circumstances in each case. Dothan Pers. Bd., 831 So.2d at 2. The test is whether ‘ “facts are shown which make it reasonable for members of the public, or a party, or counsel opposed to question the impartiality of the judge.” ’ In re Sheffield, 465 So.2d 350, 355-56 (Ala.1984) (quoting Acromag-Viking v. Blalock, 420 So.2d 60, 61 (Ala.1982)).”
Ex parte George, 962 So.2d 789, 791 (Ala. 2006).
A writ of mandamus will be issued when there is
“ ‘ “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’
“Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810, 813 (Ala.2003) (quoting Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991)). Mandamus will lie to direct a trial court to vacate a void judgment *80 or order. Ex parte Chamblee, 899 So.2d 244, 249 (Ala.2004).”
Ex parte Sealy, L.L.C., 904 So.2d 1230, 1232 (Ala.2004).
In her petition, Thacker argues that the trial court deprived her of her right to choose her own attorney. In support of her argument, Thacker relies on National Filtronics, Inc. v. Sherwood Land, LTD., 428 So.2d 11, 15 (Ala.1983),[1] and quotes the following from that case:
“The right of private counsel of one’s own choice is virtually absolute; and any denial of that right is subject to strict scrutiny, particularly where, as here, there is no question concerning the challenged lawyer’s availability and willingness to serve, and where the facts fall short of invoking the ethical considerations posed by the Canons of Professional Responsibility.”
However, in National Filtronics, which involved the issue whether an attorney could continue to represent his client after being called by opposing counsel as an adverse witness in the case, our supreme court recognized that the right to have the counsel of one’s choice is not unfettered, writing:
“It is clear from the relevant rules and interpretative cases that an attorney should be disqualified from continued employment where he elects to become a witness for his client concerning a disputed question of fact relating to the merits of the cause, if such withdrawal would not ‘work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.’ DR 5-101(B)(4)[, Ala.Code of Professional Responsibility (1979) ]. See Alexander v. Watson, 128 F.2d 627 (4th Cir.1942); Miller Electric Const., Inc. v. Devine Lighting Co., 421 F.Supp. 1020 (W.D.Pa.1976).”
Id. at 14.[2]
In addition to an attorney’s being subject to disqualification if he or she might be called as a witness in the case, see Rule 3.7, Ala. R. Prof. Cond., an attorney, or even an entire law firm, can be disqualified from representing a certain party because of a conflict of interest. See Roberts v. Hutchins, 572 So.2d 1231, 1232-33 (Ala.1990). Thacker states in her petition that she could find no case in which “these events have ever occurred before causing this court to rule on what the trial court did here.” Although this court found no Alabama case on point, the situation is not unprecedented.
In Seeco, Inc. v. Hales, 334 Ark. 134, 969 S.W.2d 193 (1998), on March 3,1998, attorney Michael Fitzhugh announced his candidacy for the circuit judgeship occupied by Judge Don Langston, who was already presiding over the Seeco litigation. A week later, Fitzhugh, for the first time, entered an appearance as local counsel for Seeco, Inc. On March 20, 1998, Fitzhugh officially filed to run for the judgeship then held by Judge Langston. Judge Langston wrote to the attorneys for the parties and advised that he had learned that Fitzhugh had contacted the case coordinator and suggested that Judge Langston recuse himself because of Fitzhugh’s judicial candidacy. In the letter, Judge Langston stated that, because of Fitzhugh’s candida *81 cy, he had recused himself in other cases in which Fitzhugh was the only attorney for a particular party. In the Seeco case, however, Judge Langston declined to re-cuse himself on the grounds that he had already presided over the case for two years when Fitzhugh filed his notice of appearance in the case and that Fitzhugh was not the lead attorney for any of the defendants. In response, Seeco filed a motion seeking Judge Langston’s recusal. After a hearing, Judge Langston denied the recusal motion but granted Hales’s motion to disqualify Fitzhugh, not only from the Seeco case but also from practicing law in Arkansas while he was a candidate for a judgeship. 334 Ark. at 136-37, 969 S.W.2d at 194-95.
On appeal, the Arkansas Supreme Court found that Fitzhugh had “participated in a contrived series of events to force Judge Langston to recuse in this case.” 334 Ark. at 139, 969 S.W.2d at 196. In affirming the trial court’s denial of the motion to recuse and Fitzhugh’s disqualification from the case (although the Arkansas Supreme Court did hold that Fitzhugh could not be precluded from practicing law during the pendency of his candidacy), the court explained:
“This court and the [Arkansas] Court of Appeals have held in the past that it is impermissible for a party or counsel to create an infirmity for purposes of requiring a judge’s recusal....
“A litigant, of course, is entitled to counsel of its own choosing. Saline Memorial Hosp. v. Berry, 321 Ark. 588, 906 S.W.2d 297 (1995). But that principle is not absolute and must be balanced against other policy considerations such as the issue we have before us today. Id. This court has long adhered to a firm and unwavering policy against ‘judge-shopping’ by attorneys, and we will not abide an orchestrated effort to force a judge’s removal from a case. Hales argues to this court, as he did to the trial court, that this conduct by Seeco and its counsel is prejudicial to the administration of justice and violates Rule 8.4(d) of the Rules of Professional Conduct. Though this rationale for Mr. Fitzhugh’s disqualification as counsel in this case differs from that espoused by the trial judge, we may affirm when a trial judge reaches the right result though for the wrong reason. Calcagno v. Shelter Mut. Ins. Co., 330 Ark. 802, 957 S.W.2d 700 (1997); Nettleton Sch. Dist. v. Owens, 329 Ark. 367, 948 S.W.2d 94 (1997). We agree with the trial judge’s decision that Mr. Fitzhugh should be disqualified as counsel in this case, though we disagree with the judge’s reason for doing so, and we hold that a violation of Rule 8.4(d) provides ample support for the judge’s conclusion.
“There is the added point that the option of allowing Mr. Fitzhugh to remain as counsel for Seeco in this case with Judge Langston presiding is an unconscionable one. Two political opponents involved in high-profile litigation mere weeks before the general election presents a highly inappropriate situation, which, we believe, would do nothing more than undermine confidence in the judicial process.”
334 Ark. at 139-40, 969 S.W.2d at 196.
In a more recent case in which the Arkansas Supreme Court affirmed the disqualification of an attorney whose law partner was the trial judge’s opponent in an upcoming judicial election, the court wrote:
“A trial court has the inherent authority to protect the integrity of the court in actions before it. City of Fayetteville v. Edmark, 304 Ark. 179, 801 S.W.2d 275 (1990). Under the Arkansas Code of Judicial Conduct Canon 1 (2003), a judge *82 bears a duty to uphold the integrity and independence of the judiciary. Further, a judge bears a duty and responsibility to disqualify counsel where counsel is guilty of conduct which is ‘unprofessional or otherwise improper.’ Norman v. Norman, 333 Ark. [644] at 651, 970 S.W.2d 270 [ (1998) ]. The Model Rules on Professional Conduct were discussed and referred to by the circuit court at the hearing. The rules of professional conduct are applicable in a disqualification proceeding. Norman, supra. The circuit court specifically referred to Rule 1.16, which discusses declining representation. Specifically, the circuit court asked Valley if representation was undertaken as a way to ‘shop for a judge.... ’ Halbert[, Valley’s attorney,] was asked if there was an attempt to ‘manipulate the system.’ Model Rule 1.16(a)(l)(2003) provides that representation shall not be undertaken where the representation will result in a violation of the rules of professional conduct or other law. ‘Judge shopping’ is not permissible and is a violation of rule 1.16.”
Valley v. Phillips Cnty. Election Comm’n, 357 Ark. 494, 498, 183 S.W.3d 557, 559 (2004).
Numerous federal courts have also condemned attempts at seeking recusal of a trial judge under circumstances that can be perceived as “judge shopping.” Judge Richard Posner, writing for the United States Court of Appeals for the Seventh Circuit, wrote: “[I]t is improper for a lawyer or litigant ... to create the ground on which he seeks the recusal of the judge assigned to his case. That is arrant judge-shopping.” Sullivan v. Conway, 157 F.3d 1092, 1096 (7th Cir.1998). See also In re National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 839 F.2d 1226, 1229 (7th Cir.1988) (“Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping.” (citation omitted)); United States v. Pungitore, 15 F.Supp.2d 705, 714 n. 4 (E.D.Pa.1998) (“A liberal recusal policy would encourage judge shopping.”); Scott v. Pryor (In re Chandler’s Cove Inn, Ltd.), 74 B.R. 772, 773 (Bankr.E.D.N.Y.1987) (“[Rjecusal motions which are too liberally granted are tantamount to unilateral ‘judge shopping’ and may be used as a delaying tactic, for their disposition requires a serious investment of judicial time and thought.”).
Like the Arkansas rules governing the conduct of attorneys and judges, the Alabama rules apply to circumstances such as those in the instant case. Rule 1.16(a)(1) of the Alabama Rules of Professional Conduct provides that “a lawyer shall not represent a client ... if: (1) the representation will result in violation of the Rules of Professional Conduct or other law.” Rule 8.4(d) of the Alabama Rules of Professional Conduct states that it is professional misconduct for a lawyer to “engage in conduct that is prejudicial to the administration of justice.” Canon 1 of the Alabama Canons of Judicial Ethics imposes on judges the duty to maintain and enforce “high standards of conduct so that the integrity and independence of the judiciary may be preserved.”
In her petition, Thacker asserts that the trial court’s order denies her the attorney of her choice. However, the materials submitted to this court indicate that the choice to associate Lacher was made by Fite, not by Thacker. Fite testified: “I wanted [Lacher] to assist me with my client, so that’s why I asked her to come on.” There is no evidence before us indicating that Thacker had ever sought to retain Lacher. Fite’s stated reason for associating Lacher in this case was be *83 cause he is “known for not being very warm and fuzzy, and sometimes it’s appropriate to have another lawyer who can provide that element.” Fite’s explanation did provide a reason why he needed Lacher — the one attorney who would necessitate Judge Stedham’s recusal — to fill that role. Fite, however, also did not present any special facts or circumstances that would indicate that associating Lacher did not constitute judge shopping or was not intended to further delay this action.
Although in its order denying the motion to recuse and “granting” Lacher leave to withdraw from the case the trial court did not explicitly state that Fite and Lacher had engaged in judge shopping, the evidence contained in the materials submitted to this court would support such a finding. Fite admitted at the hearing that “we knew that [recusal] might be an issue that might be raised,” but he brought Lacher into the case anyway. Further, it was Lacher who filed the motion to recuse based on her entry into the case, so she was no doubt aware that her conduct created the ground for recusal. We agree with other courts that have concluded that when an attorney creates circumstances that are solely calculated to require the recusal of the trial judge, he or she has engaged in conduct that impugns the integrity of the judicial system and recusal is not required. This court condemns such attempts to manipulate the judicial system.
Based on the authority cited above, we conclude that, under the facts of this case, Thacker has failed to demonstrate that she has a clear legal right to the relief she has requested in her petition, i.e., she has not shown that the trial court abused its discretion in directing Lacher to withdraw from this matter. Once Lacher has withdrawn from the case, the basis for the motion to recuse will no longer exist. Accordingly, the trial court properly determined that the motion to recuse is moot. Thacker’s petition for a writ of mandamus is denied.
PETITION DENIED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs specially.

. When National Filtronics was decided, the former Alabama Code of Professional Responsibility was in effect. The Code of Professional Responsibility was superseded by the Alabama Rules of Professional Conduct effective January 1, 1991.

. The supreme court went on to note the circumstances under which a lawyer may continue to represent his or her client when the lawyer anticipates being called as a witness. That discussion is not relevant to the case at bar, however.